GOVERNMENT OF THE CAPITAL, Plaintiff and Appellee, *v.* EXECUTIVE COUNCIL OF PUERTO RICO, ETC., ET AL., Defendants and Appellants.

No. 8703. Argued July 7, 1944.—Decided July 3, 1944.

*F. Fernández Cuyar, H. González Blanes,* and *Cayetano Coll Cuchí,* for Government of the Capital, petitioners. *Jesús A. González,* Acting Attorney General, *Fernando B. Fornaris,* Assistant Attorney General, and *Luis Negrón Fernández,* for the Governor, the Executive Council, and the Water Resources Authority of Puerto Rico. *James E. Curry, José Vilá Ruiz,* and *Antonio M. Bird,* of counsel, for Water Resources Authority.

MR. JUSTICE SNYDER delivered the opinion of the court.

This case is still with us. On April 20 we reversed a declaratory judgment of the district court and entered a new declaratory judgment of our own to the effect that Act

No. 39, Laws of Puerto Rico, 1941, Special Session (p. 138), as amended by Act No. 29, Laws of Puerto Rico, 1942 (p. 410), "is not void because it fails to provide for just compensation in the event that the aqueduct of the Government of the Capital is transferred to the Water Resources Authority of Puerto Rico under the terms of the said Act."

On April 28 The Capital filed a notice of appeal to the Circuit Court of Appeals from our judgment of April 20. On June 1, for the reasons stated in our opinion of the same date, we denied the motion of April 28 of The Capital that we "fix the amount of the bond which it must post, and then issue a writ of supersedeas . . . ".

On June 6 The Capital filed a petition alleging that the Executive Council had adopted a resolution on June 2 reciting that the Commissioner of Health has reported, pursuant to the said Act No. 39, that "in his opinion the waterworks systems of the municipalities of the Capital of Puerto Rico, Río Piedras, Guaynabo, Bayamón and Cataño fail to provide to the inhabitants of each or any of said municipalities a supply of water of a quality, amount, and regularity sufficient for the ordinary requirements of said inhabitants under standards fixed by the Treasury of the United States for potable water and water for culinary uses furnished to the public carriers in interstate commerce". The said petition also alleges that in said resolution the Executive Council had designated an examiner to conduct a hearing on June 12 "at which said municipalities shall have the right to appear and show cause why a resolution or resolutions should not be adopted providing for the transfer of said waterworks to the Puerto Rico Water Resources Authority . . . ".

The petition of June 6 of The Capital then makes the following allegation:

"5. That the commencement of the proceedings mentioned represent irreparable damages to the plaintiff, Government of the Capital, and also tend to make ineffective the appellate jurisdiction of

the Boston Circuit Court, at the same time exposing the appellants to a multiplicity of unnecessary litigations, in case that the appeal were decided in its favor.''

The petition concludes with a prayer that we enter an order in this proceeding directed to the defendants-appellants herein (appellees in the Circuit Court of Appeals) [1] ''staying the proceedings commenced by the Executive Council of Puerto Rico with the purpose of transferring the San Juan aqueduct to the Puerto Rico Water Resources Authority, also staying any action the defendants might attempt tending to carry out such transfer . . . until said appeal is decided . . . ''.

We set this petition for hearing on June 7, on which date the defendants appeared and filed a written opposition thereto. On that same date counsel for the Water Resources Authority announced his belief that we had no jurisdiction to grant the petition of June 6 of The Capital, and petitioned the Court orally to grant him permission to file a brief to sustain this contention. He stated that he needed until June 12 to file his brief, and that he felt that it was reasonable to require The Capital to reply thereto by June 17. We therefore entered an order on June 7 granting this request of counsel for the Water Resources Authority. We stated in our order of June 7 that ''it would be impossible for this Court to decide said legal questions before June 12, 1944, which is the date set for commencing the public hearing before the Executive Council''; and this Court therefore ordered the Executive Council to abstain from initiating or continuing the admnistrative proceeding in question ''without prejudging in any way whatsoever, the question raised as to its lack of authority to issue the writ of injunction prayed for, and with the sole purpose of protecting its juris-

---

[1] The defendants-appellants here are the members of the Executive Council and the Water Resources Authority; they are hereinafter referred to as the defendants.

diction to decide the questions that will be submitted for its decision within this proceeding . . . ''.

On various dates subsequent to this order of June 7 we heard testimony on the merits of the petition of June 6 of The Capital, and the parties have filed their briefs.

 We are confronted, at the threshold of our consideration of this petition, with the contention of the defendants that we have no jurisdiction at this stage of this proceeding to enjoin the Executive Council from conducting the hearing provided for in its resolution of June 2. We therefore address ourselves to that question.

To answer this question, we must determine: (1) the nature of the proceeding now before us; and (2) the source of our alleged authority to act in the premises.

We have already partially answered the first question in our opinion of June 1 refusing the motion of The Capital for the setting of a supersedeas bond. There we pointed out that the case before us involved a declaratory judgment, and nothing more. In the district court no permanent injunction was ever specifically requested, either in the complaint or in any subsequent pleading. Although The Capital applied for an injunction *pendente lite,* the hearing thereon, by stipulation of the parties, was never conducted; the request therefor was not renewed; and no such injunction was ever issued. Nor did The Capital, after the district court entered a declaratory judgment holding Act No. 39 unconstitutional, pray for an injunction, as it had every right to do under §8 of the Uniform Declaratory Judgment Law, Act No. 47, Laws of Puerto Rico, 1931 (p. 378). If such a motion had been made, we would have been in a position to pass on the ruling of the district court, granting or denying the motion for injunction, in the appeal herein, and our ruling thereon would now be before the Circuit Court of Appeals. But The Capital chose not to move in the lower court for an injunction. And we therefore never have had

before us on appeal any action of the district court passing on a request for injunctive relief. We go further and assume, without deciding, that in spite of the failure of The Capital to press for such coercive relief in the district court, if we had affirmed the judgment of the lower court, this Court could thereafter have entertained and granted such a petition of The Capital for an injunction. While this last point is, of course, academic, in view of the fact that we reversed the declaratory judgment of the district court and declared Act No. 39 to be constitutional, we include it in the discussion herein to emphasize the fact that there is no room for the contention here that there was ever before this court or ever will be before the Circuit Court of Appeals on the merits anything but a bare declaratory judgment. In short, the appeal here was from a declaratory judgment, and not from a declaratory judgment plus an order granting or refusing an injunction. And the same situation now exists in the Circuit Court of Appeals.

The Capital nevertheless insists that we have the "inherent power" to grant its petition for an injunction to restrain the Executive Council from conducting the administrative proceeding provided for in its resolution of June 2 a petition for injunction, we repeat, which was never passed on in the district court. We therefore examine the second question—the source of our alleged authority to take such action under these circumstances.

The brief of The Capital asserts that "The injunction in the present case is requested in aid of the appeal, as was prayed for in the *Cumberland* case, *supra* . . .". But the very first sentence of that brief recognizes the difference between the instant case and the *Cumberland* case. The brief of The Capital begins by pointing out that "In the case of *Cumberland Telephone & Telegraph Co.* v. *Louisiana Public Service Commission* (260 U. S. 212), it is held that although the Supreme Court undoubtedly *has the power to grant a*

*temporary injunction in order to protect the appeal from a judgment denying an injunction,* generally, such a request ought to be presented to the judges who heard the case on the merits and who can exercise more adequately their sound discretion in order to determine the balance of convenience which determines whether or not the injunction ought to issue." (Italics ours.)

The *Cumberland* case cites *Hovey* v. *McDonald,* 109 U. S. 150, 161, on which The Capital also relies here. In its brief The Capital cites only two more cases—*Doughty* v. *Somerville & Easton R. R. Co.,* 51 Am. Dec. 267 (N. J., 1848) and *Norris* v. *Tripp,* 82 N. W. 610 (Iowa, 1900)—for its proposition that we have the "inherent power" to take the action it urges upon us. But an examination of all the cases cited by The Capital discloses that in all of them with the possible exception of the *Morris* case,[2] as The Capital itself points out in citing the *Cumberland* case, the court was being asked to restore or to grant a temporary injunction pending appeal from a judgment granting or denying an injunction. No case has been cited to us, and we have found none, in which an intermediate appellate court, such as this court, has ever granted an injunction pending appeal to a higher court from a declaratory judgment which contains within it only a declaration of constitutionality. That this is an important distinction will soon become evident.

The Capital is clearly correct in its statement that any injunction granted by us herein at this stage could be only for the purpose of protecting the appellate jurisdiction of the Circuit Court of Appeals. Our function in passing on

---

[2] It is difficult to tell on what theory the court acted in the *Norris* case. It may be a case on all fours with the other cases cited by The Capital. But even assuming it is not, at the most the court there was exercising "the power to stay—a power as old as the judicial system of the nation". (*Scripps-Howard Radio* v. *Comm'n,* 316 U. S. 4, 17). But we have already concluded, for the reasons stated in our opinion of June 1, that a stay is not appropriate in the instant case.

the merits of the case has been completed. By the same token, since nothing remains for us to do as the court of last resort in the system of insular courts, whatever we do to protect the jurisdiction of the Circuit Court of Appeals must necessarily be done in our role of an inferior court in the hierarchy of Federal courts. It would therefore seem obvious that our power to act herein, if it exists, must stem from Federal statutes, rules, and cases.

In proceeding to an examination of the Federal Law, we are initially confronted with the problem of whether the Federal Rules of Civil Procedure apply to appeals from this court to the Circuit Court of Appeals. In Note 2 to Rule 1 the Advisory Committee on the Federal Rules stated the following: "The expression 'district courts of the United States' appearing in the statute authorizing the Supreme Court of the United States to promulgate rules of civil procedure does not include the district courts held in the territories and insular possessions. See *Mookini et al.* v. *United States*, 303 U. S. 201, 58 S. Ct. 543, 82 L. Ed. 748 (1938)." (Title 28, U.S.C.A. foll. §723c, Rule 1).

Congress took note of this situation and passed a special statute making the Federal Rules applicable "to the District Court of the United States for Puerto Rico and to appeals therefrom". (Title 48, U.S.C.A. §873a). But no such special statute was passed making the Federal Rules specifically applicable to appeals from this court to the Circuit Court. Moore comments on the situation as follows:

"Appeals from the Supreme Court of Puerto Rico lie to the Circuit Court of Appeals for the First Circuit, and from the Supreme Court of Hawaii, to the Circuit Court of Appeals for the Ninth Circuit, unless a direct appeal to the United States Supreme Court is provided by statute. There seems to be nothing in the statutes of the United States or in the organic acts of the territories which clearly indicates that the method of taking and perfecting an appeal from the Supreme Courts of those territories shall conform to the method of taking and perfecting an appeal from a district court

to a circuit court of appeals or to the United States Supreme Court, as the case may be. Nevertheless, it would seem desirable that there be conformity in such appeals to appeals from the district courts of the United States for those territories; and, therefore, that the Federal Rules should be applicable to appeals from the Supreme Courts of those territories, if the Federal Rules are applicable to the district courts of the United States for those territories." (1 Moore's Federal Practice, §1.09, pp. 61–2).

Our Circuit Court of Appeals, in its Revised Rules effective September 20, 1940, perhaps relying on Title 48 U.S. C.A. §865,[3] specifically provides in paragraph 6 of Rule 10 that Rule 10—which substantially restates Rule 73 of the Federal Rules of Civil Procedure setting forth the manner of prosecuting appeals from the district courts to the Circuit Courts—shall be applicable to appeals from this court to the Circuit Court. In all the appeals from this court to the Circuit Court of Appeals since the Revised Rules of the Circuit Court went into effect, this court and the parties have assumed that the appellate provisions of the Federal Rules apply thereto and have acted accordingly. No one has apparently questioned this practice in this court or in the Circuit Court. We shall therefore assume, without deciding, that the Federal Rules apply to this appeal.[4]

But if the Federal Rules apply to the appeal herein, they apply not only as to the various steps which must be taken to perfect an appeal to the Circuit Court of Appeals, but

---

[3] Section 865 reads as follows:

"Writs of error and appeals. Writs of error and appeals from the final judgments and decrees of the Supreme Court of Porto Rico may be taken and prosecuted to the Circuit Court of Appeals for the First Circuit and to the Supreme Court of the United States, as provided by law."

[4] If the Federal Rules do not apply herein, presumably the former practice continues to prevail. Under the old practice an order granting the appeal was necessary, and it "was the allowance of the appeal . . . which stopped the running of the time for appeal." (3 Moore's Federal Practice, §73.01, p. 3390). Here no order has been entered allowing the appeal—The Capital has simply filed a notice of appeal, presumably pursuant to Rule 73(a) of the Federal Rules and Rule 10 of the Circuit Court of Appeals.

also as to the relief which this Court is authorized to grant to protect the jurisdiction of the Circuit Court in connection with an appeal thereto. Testing the petition for injunction herein against the said appellate provisions of the Federal Rules, we find that Rule 62(c) is the only Rule which may possibly be applicable herein. That Rule reads in part as follows:

"Injunction Pending Appeal. When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party."

That Rule is not a newcomer to Federal appellate practice. It is modelled on Equity Rule 74 and is substantially identical with that Rule, except that it broadens the former Equity Rule somewhat.[5] In the *Cumberland* case the Supreme Court of the United States cites Equity Rule 74 as justifying granting an injunction pending appeal from a judgment denying an injunction. Consequently, it is immaterial whether we rely herein on the case law as represented by the *Cumberland* case, or the former practice as embodied in Equity Rule 74, or on Rule 62(c) of the Federal Rules of Civil Procedure—each, for our purposes, is a restatement of the previously existing rule.

But the fatal flaw in the case of The Capital is that the relief authorized by Rule 62(c) and its predecessors is based on the premise that the "appeal is taken from . . . [a] . . . judgment granting, dissolving or denying an injunction...". Under those circumstances "the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal. . .". And here, as we have seen, we have no appeal from a judgment granting or denying an

---

[5] Federal Rules of Civil Procedure and Proceedings of the American Bar Institute, Cleveland, 1938, p. 326; 3 Moore's Federal Practice, §62.03, pp. 3296-8.

injunction. The district court entered only a declaratory judgment. The appeal therefrom to this Court included no appeal from a judgment granting or refusing an injunction. Our judgment, which is being appealed to the Circuit Court, is to the same effect. Rule 62(c), and the case law and previous Equity Rule which it codified, can therefore have no possible application to the judgment now on appeal to the Circuit Court of Appeals. What The Capital is in effect asking us to do is to entertain in this court within this proceeding an original injunction suit collateral to the present suit for declaratory judgment. But by our final judgment on the merits we exhausted all the jurisdiction we have in this particular declaratory judgment proceeding under insular law as the insular court of last resort. Once appeal is taken to the Circuit Court of Appeals, we have no further role to perform as the insular appellants court. Thereafter we can take action only in aid of that appeal. And in so acting, we operate as a lower Federal court within the Federal justicial system pursuant to Federal law. Our examination of such Federal law has disclosed no basis on which, in aid of an appeal from a declaratory judgment, we are authorized to pass on a petition for injunction which was not before us when we rendered the judgment which is now on appeal to the Circuit Court of Appeals. There is, in short, no injunction in the case to "suspend, modify, [or] restore . . ." pending appeal; and there has been no judgment "denying" an injunction which we could "grant" pending appeal. The only thing before the Circuit Court of Appeals is a declaration of constitutionality; no action can be taken by this court—or is, indeed, needed—to protect the jurisdiction of the Circuit Court of Appeals of the appeal from our judgment making that declaration.

Any argument that our decision is based on a difference of form and not of substance will not bear sustained analysis. The Capital chose its path. If they had pressed for injunc-

tive relief, the district court, even while finding in its favor in the declaratory phase of its judgment might conceivable have found no irreparable injury warranting injunctive relief, particularly in view of the provision of §5 of the Aqueduct Law that a petition for review by this court of a resolution of the Executive Council transferring an aqueduct from a municipality to the Water Resources Authority operates as a stay of such a resolution. If the district court had so held, we might well have found no abuse of its discretion by the district court, and have affirmed. The Capital now wishes us, allegedly as a device to protect the jurisdiction of the Circuit Court of Appeals in a declaratory judgment proceeding, to grant it an injunction which it never chose to press for within that declaratory judgment proceeding. If petitions for injunctions are to be "restored" or to be "granted" pending appeals, such petitions must run the gamut of the courts while the case is before them on the merits, and not be produced out of some magic rocket of "inherent power" in a collateral proceeding [6] brought to protect the jurisdiction of an appellate court which does not have before it an appeal from a judgment granting or denying an injunction. This case, in view of its history, is simply not an injunction proceeding and we have no power at this late date to convert it into one.

This opinion might well end at this point. But in view of the wide range of the arguments and the testimony at the hearing on the merits of this petition for injunction, we do not deem it inappropriate to point out that we have by no

---

[6] Counsel for The Capital apparently understand that their present petition is in effect a collateral proceeding, in view of their citation, in support of their position, of the Annotation at 77 A.L.R. 717, which deals with *ancillary* injunctive relief. But such an ancillary proceeding is, of course, ordinarily an independent suit on the merits standing on its own feet in a court of competent jurisdiction, and not a motion within a suit, allegedly designed to protect the jurisdiction of a higher court over a judgment on appeal which contains neither an affirmative or a negative ruling relating to injunctive relief. To grant the latter motion would be to give direct, not ancillary, relief.

means held that the balance of convenience is in favor of refusing the petition for injunction herein. On the contrary, although repeatedly invited to do so from the bench, the defendants presented not a scintilla of competent evidence tending to establish that the water furnished by the aqueduct of The Capital is contaminated. They made an attempt to make such a showing, but abandoned it during the course of the hearing. They prevail here, not because we have resolved the balance of convenience in their favor on the merits, but because we have no jurisdiction to grant the petition of The Capital for injunction at this stage of this proceeding.

We likewise quote with approval the following statement in the brief of the defendants: ''No transfer of the Aqueduct can possibly take place until this Court has another opportunity to pass upon the merits of the decision. The Aqueduct Law provides that any municipality *affected* by such resolution may obtain a review in this Court; there is no limitation upon this privilege. And upon the filing of a petition for review, the order requiring transfer of the Aqueduct is automatically suspended.''

If a situation arises whereby this court has ruled against a municipality on a petition for review of a resolution in such an administrative proceeding prior to a final determination of the constitutionality of Act No. 39 by the courts above us, there would remain for consideration the problems of (1) retention of our mandate in the administrative proceeding until such a final determination in the constitutional proceeding, and (2) the jurisdiction of the Circuit Court of Appeals to entertain an appeal from our decision in the administrative proceeding,[7] in spite of the provision of §5 of the Aqueduct Law that the ''decree'' of this Court ''shall be final, unreviewable, and unappealable''. Cf. *Paul*

---

[7] The ultimate decision of that question would, of course, have to be made by the Circuit Court of Appeals and not by us.

*Smith Const. Co.* v. *Buscaglia,* 140 F. (2d) 900 (C.C.A. 1st, 1944), footnote 1.

In view of our lack of jurisdiction, the petition of June 6 of The Capital for an injunction will be denied.